NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, RWDSU, AFL–CIO, and District 1199, National Union of Hospital and Health Care Employees, RWDSU, AFL–CIO, Plaintiffs,

v.

Hugh CAREY, Governor of the State of New York, and Robert P. Whalen, Commissioner of Health of the State of New York, Defendants.

No. 76 Civ. 645.

United States District Court, S. ·D. New York.

March 23, 1976.

Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City, for plaintiffs; Harry Weinstock, Richard Dorn, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; Michael Fogarty, Asst. Atty. Gen., of counsel.

METZNER, District Judge.

Plaintiffs, the National Union of Hospital and Health Care Employees, RWDSU, AFL–CIO, and District 1199 of that union (hereinafter collectively "the unions"), move for a preliminary injunction to bar the enforcement of two recently promulgated regulations of the defendant Commissioner of Health of the State of New York. These regulations, it is claimed, effectively freeze the rate of Medicaid reimbursement at 1975 levels. 10 N.Y.C.R.R. §§ 86.21(k), 86.17 (eff. Nov. 26, 1975).

The action seeks declaratory and injunctive relief based on the claim that such a freeze of Medicaid rates is in violation of two federal statutes. The first is 42 U.S.C. § 1396a(a)(13)(D) which requires reimbursement to hospitals and nursing homes for the full reasonable cost of health care services rendered pursuant to the statute. The second is the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 141, *et seq.,* which is claimed to be violated because the freeze places an undue burden on free collective bargaining.

Section 86.21(k) of Title 10 provides:

"(k) Effective for fiscal years ending in 1976 and thereafter allowable costs per unit of service (in-patient day, clinic visit, etc.) in a base year will not include any cost increases over the prior year which are in excess of the inflation factor used by the department in determining the reimbursement rate in effect during such base year unless the cost increases in the base year resulted in a rate revision during the rate year in accordance with section 86.17 of this Part."

(10 N.Y.C.R.R. § 86.21(k).)

Section 18.17 does not include any provision for a raise in reimbursement due to a negotiated contract with a union for an increase in wages.

There is no question that labor is the major expense in the operation of a health care facility. The record shows that health care facilities have already stated to the unions that pay increases over present levels will be impossible as contracts come due, since such increases would not be covered by Medicaid reimbursement except for an inflation factor determined by the Department of Health. The department takes the position that rate increases cannot be relied on by provider health services to solve their labor problems. Hence, the union brings this action to declare the regulations void.

The defendants claim that this action is premature, since payments under existing contracts have not been affected, that plaintiffs lack standing to sue, and that the regulations do not conflict with either of the federal statutes relied on by plaintiffs.

As to the state's claim that the action is premature, the complaint states that a strike has already been prolonged, and a collective bargaining agreement rendered null and void because of the application of the regulations. The plaintiffs also claim that they have been informed by employers that the Medicaid freeze precludes consideration of any increase in wages when the present contract expires on June 30, 1976.

Obviously, it is advantageous to negotiate a new contract in advance of the expiration date of the existing contract. The wage question is already being discussed. The impact of the regulations is being felt now. It would be counter-productive to await a strike in July before deciding the issues presented by this application.

We come then to the question of standing. As the most recent expostulation of standing has put it, the plaintiff must allege that he himself has suffered " 'some threatened or actual injury resulting from [a] putatively illegal action . . . .' " *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354 (1975) (citation omitted). This has been characterized as the minimum constitutional mandate of Article III.

The Court went on to state that "even when the plaintiff has alleged injur[ies] sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his

own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* (citations omitted).

Finally, when it comes to the prudential rules of standing, the source of the claim to relief assumes critical importance, and in such cases the question is whether "the constitutional or statutory provision on which the claim rests properly . . . be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* at 500, 95 S.Ct. at 2206, 45 L.Ed.2d at 355 (footnote omitted).

■ Standing requires that the plaintiffs have such a personal stake in the outcome of the controversy that the questions will be framed with necessary specificity, contested with necessary adverseness, and pursued with necessary vigor. *See Flast v. Cohen,* 392 U.S. 83, 106, 88 S.Ct. 1942, 1955, 20 L.Ed.2d 947, 965 (1968); *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 677 (1962).

In the instant case, plaintiffs argue that injury in fact alone justifies their lawsuit. Injury is alleged to flow from the administrative action taken by the state since it fails to include pay increases in determining the reasonable cost of in-patient services rendered to Medicaid patients and reimbursed by state payments to health care institutions. Injury is also claimed because the state action is alleged to interfere with the statutorily protected right of collective bargaining.

■ Under federal law, all states which provide federally supported Medicaid payments must reimburse the full actual reasonable cost of those services so that no non-Medicaid patient is burdened with any portion of the expense of patients who are Medicaid covered. 42 U.S.C. §§ 1396a(a)(13)(D), 1395x(v)(1)(A); 45 C.F.R. § 201.2; 20 C.F.R. §§ 205.30, 405.402. In this case the direct injury, if any, is to two possible groups. The first group is composed of the health care institutions which are being limited to reimbursement for Medicaid patients at

1975 levels of payment, plus an inflation factor. If this limitation fails to satisfy the requirement for reimbursement for the reasonable cost of services rendered, it is the right and duty of the hospital to seek redress. They are in the best position to review and justify all the elements that are to be considered in arriving at a judgment as to what may be the reasonable cost of servicing a Medicaid patient. Conceivably, it could be determined that the negotiated labor cost is not reasonable because the employers did not bargain in good faith since they knew that whatever the result might be, they could automatically obtain reimbursement under the Medicaid formula. This possibility is not far-fetched in view of plaintiffs' allegations that the employers are using the freeze as a reason for not granting any increase in wages.

A second group directly injured would be those patients who would be charged disproportionately higher rates by reason of limitations in reimbursement for Medicaid patients. Such patients would include private patients or those insured by Blue Cross or Medicare.

■ However, there is no statutory provision in the federal legislation providing for Medicaid programs which can be understood to afford plaintiffs a right to judicial relief. The legislative history of the statute reveals no intent to protect health care employees. In other words, the "logical nexus between the status asserted and the claim sought to be adjudicated" (*Flast v. Cohen,* 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947, 963 (1968)), is not present.

■ Plaintiffs have failed to show standing under any of the relevant indicia to seek relief for any claimed violations of 42 U.S.C. § 1396a.

The second ground alleged as justifying the relief sought is based on a claimed interference by the state with the unions' right to free and unhindered collective bargaining. The plaintiffs argue that by freezing the Medicaid reimbursement rate, health service providers are rendered unable to bargain freely

with the unions, and that thus, the state regulations are in conflict with and preempted by the provisions of the LMRA. It is their position that they are entitled to an increase in wages in excess of current levels, plus a percentage reflecting the inflation rate for the present year. Under this theory, plaintiffs clearly have a stake in the outcome, and are within the protective intendment of the LMRA. Accordingly, if, under a provision of the LMRA, there is a right that may be enforced in this area against the state, the unions would have standing to raise such a right.

■ However, the court has reached the conclusion that plaintiffs fail to state a claim under the LMRA.

Plaintiffs rely on several sections of the LMRA to show that the state action interferes with federal law. They cite Section 7, 29 U.S.C. § 157, which guarantees the right to free bargaining, and Section 8, 29 U.S.C. § 158, which makes a refusal to bargain in good faith an unfair labor practice. *E. g., NLRB v. Insurance Agents' Int'l Union,* 361 U.S. 477, 485, 80 S.Ct. 419, 425, 4 L.Ed.2d 454, 461 (1960). The state's action does not prevent the employees from joining organizations of their own choosing or from bargaining collectively through representatives of their own choosing or from engaging in the other activities covered by Section 7.

Section 8 is directed against the employer. The state, however, is not the employer. Plaintiffs have cited no authority which holds that an independent business decision by one not a party to the collective bargaining agreement exposes that third party to suit under Section 8.

Furthermore, the freeze does not prevent the employers from bargaining in good faith. In the first place, the available sources of income are not limited to Medicaid reimbursement. Secondly, limitations on the sources of income do not connote refusal to bargain in good faith. Such limitations are important factors in arriving at the ultimate agreement.

It is undoubtedly true, as shown by the authority relied on by plaintiffs, that the state may not legislate in conflict with an area of federal preemption, and that hence, a state statute compelling arbitration was invalid as against federal law which makes collective bargaining and arbitration voluntary. *North Shore University Hospital v. Levine,* 90 L.R.R.M. 2529 (E.D.N.Y.1975). This is a far cry from what is claimed in this case.

Similarly, the statement by the fact finder in *Waterbury Hospital and District 1199,* Case No. H.C. 175–732–B.O.1., to the effect that he could not be limited by a policy of the Connecticut Commission on Hospitals and Health Care that it would not approve hospital budgets which reflected an increase in labor costs in excess of 9 per cent, is not in point.

The motion for a preliminary injunction is denied and the complaint is dismissed.

So ordered.